Lizzie DeGraff, Plaintiff in Error, *vs.* Nettie Manz *et al.* Defendants in Error.

*Opinion filed October 25, 1911—Rehearing denied Dec. 6, 1911.*

1. Equity—*power of a chancellor over trial of feigned issues.* Where a trial by jury in a chancery case is not a matter of right it is within the discretion of the chancellor to submit questions of fact to a jury, and it is within his power, after a trial of feigned issues is entered upon by the jury, to withdraw such issues or direct a verdict in accordance with his views of the evidence and render a decree accordingly.

2. Same—*when a decree dismissing bill to cancel deed must be upheld.* A decree dismissing a bill filed by heirs to cancel their ancestor's deed upon the ground of fraud and undue influence by the grantees must be sustained, where no evidence fairly tending to sustain such charges is offered, but, on the contrary, the proof is clear that the grantor acted upon independent advice and made the deed freely and voluntarily, for the purpose of carrying out her own desires.

3. Deeds—*unconditional delivery in escrow is good.* The unconditional delivery of a deed to a third party, with instructions to deliver it to the grantee after the death of the grantor, who parts with all dominion over the instrument, constitutes a good delivery and will pass title to the grantee.

4. Same—*when deeds are well delivered.* Where the grantor executes a deed to a stranger and the latter immediately executes a deed to the grantor's son, both of which deeds are then delivered by the grantor to her business adviser, who executes an escrow agreement to record the deeds and deliver them to the grantor's son after the grantor's death, there is a good delivery of the deeds

even though the first grantee was not intended to have manual possession of the deed, since the business adviser, after the unconditional delivery in escrow, holds as agent for the parties for whose benefit the subsequent acts were to be performed.

Writ of Error to the Circuit Court of Cook county; the Hon. Richard S. Tuthill, Judge, presiding.

Martin C. Koebel, and Hayden N. Bell, for plaintiff in error.

Cheney, Evans & Wilson, for defendants in error.

Mr. Justice Vickers delivered the opinion of the court:

Lizzie DeGraff, a grand-daughter of Marcianna Kallas, filed a bill in chancery against Frank Kallas, Nettie Manz Kallas and other formal defendants, for partition, and for a decree setting aside a deed made by Marcianna Kallas to Nettie Manz Kallas as a cloud upon the title of the complainant below, upon the alleged grounds of fraud and undue influence and for the further reason that said deed was never delivered to the grantee. The answer of the defendants denied all of the grounds relied upon for relief. The trial court directed two issues at law to be made up and submitted to a jury for determination. The issues formulated for determination by the jury were, first, whether the deed in question was the deed of Marcianna Kallas; and second, did Marcianna Kallas, at the time of her death, hold title to a portion of the real estate described, as trustee, for the benefit of Frank Kallas. Upon the hearing before the jury the court withdrew the second issue from the consideration of the jury, and after the evidence was all heard, on motion of defendants, directed the jury to find a verdict for the defendants upon the first issue submitted and rendered a final decree dismissing the bill for want of equity. The complainant below has sued out a writ of error to bring the record into review in this court.

Plaintiff in error first insists that the court erred in directing a verdict upon the feigned issue made up for submission to the jury. The argument on this point is, that the verdict in such case being merely advisory to the chancellor· and of an evidentiary character, the whole purpose of a jury trial is defeated when the verdict is the result of an expressed direction of the court. There might be much force in this contention if the trial by jury were a matter of right which the parties could demand and which the court could not refuse to grant. But such is not the established practice in respect to the trial of feigned issues out of chancery. It is a matter entirely within the discretion of the chancellor, in all chancery cases where a trial by jury is not specially provided for by statute, to submit or refuse to submit questions of fact to a jury, and his discretion in this regard continues throughout the entire hearing of the cause. It follows that the chancellor has entire control of the issues until they are finally settled by the decree of the court. The verdict of the jury is merely for the purpose of satisfying the conscience of the chancellor, and if, after the trial is entered upon before the jury, the evidence develops a state of facts upon which the chancellor is satisfied to rest a final decree without reference to any verdict that the jury might render, the court may discharge the jury without a verdict, or, as was done in this case, direct a verdict in accordance with the court's views and render a decree accordingly. In the late case of *Riehl* v. *Riehl, 247* Ill. 475, this court had occasion to consider and determine the practice governing the trial of feigned issues out of chancery, and it was there decided that any error or irregularity in the proceeding before the jury, such as rulings upon evidence and the like, is unimportant if upon a consideration of the entire record there is competent evidence sufficient to support the decree and substantial justice appears to have been done between the parties. The error now under consideration is within the reasoning of the

case above cited, and that case is sufficient to justify the action of the court below in withdrawing the feigned issue from the consideration of the jury.

The other assignments of error raise questions of fact. It is contended by plaintiff in error that the decree is contrary to the evidence relating to the issue of fraud and undue influence. The evidence establishes the following facts: At the time of her death Marcianna Kallas was a few months over seventy-five years of age. She had been a widow for a number of years. She held the title to three parcels of real estate located in the city of Chicago, on one of which,—that known as the Cornell street property,—she resided. She had two sons, Joseph and Frank Kallas. After his mother became a widow, in the spring of 1903, Joseph Kallas moved with his wife and three children into the house with his mother. In December, 1903, Joseph Kallas had domestic troubles which resulted in a separation, and his wife left the home of Marcianna Kallas, leaving her husband and some of their children at the home of Marcianna Kallas. Joseph resided with his mother and took care of her until in 1905, when he, on account of illness, was removed to a hospital, where he soon after died. At the time of his death Joseph Kallas left surviving him his wife, Anna Kallas, and three children, Lizzie, Charles and Bertha. Lizzie married a man by the name of De-Graff, and she was complainant below and is plaintiff in error in this court. After the death of Joseph Kallas, the other son, Frank Kallas, who had separated from his wife, went to live with his mother. The evidence tends to show that during the time Joseph resided with his mother she was not on friendly terms with Frank, and after Frank moved into her house, and after the death of her son Joseph, there was some feeling of animosity manifested by the children of Joseph toward their grandmother. Nettie Manz, a widow, was employed by Marcianna Kallas to do the general housework and wait upon the old lady. For

several months before her death Marcianna Kallas had dropsy and fatty degeneration of the heart. She was, however, able to be up all of the time except the last three or four weeks of her life. The evidence shows that Nettie Manz was very kind to Mrs. Kallas, and for several months before her death she was the constant companion and servant of Mrs. Kallas. It was well known to Mrs. Kallas that her son Frank and Nettie Manz were to be married as soon as Frank obtained a divorce from his former wife. Ralph I. Terwilliger was a banker, real estate agent and notary public. For fifteen years he had been the friend and confidential adviser of Mrs. Kallas and of her husband until his death. The evidence shows that Marcianna Kallas desired to give all of her real estate to her son Frank and that she did not intend that the children of Joseph Kallas should receive any portion of her estate. Reasons for this disposition of her estate are disclosed by the evidence showing the coldness and indifference with which the grandchildren treated Mrs. Kallas. They refused to visit her or to speak to her after their father's death, although the evidence shows that Mrs. Kallas frequently expressed the desire to have her grandchildren visit her and maintain friendly relations one with the other. After Marcianna Kallas determined to dispose of her property in the manner above indicated, Mr. Terwilliger was sent for and his advice was sought and acted upon, which resulted in the execution of a deed to Nettie Manz conveying all of the property involved in this suit, and at the same time and as a part of the same transaction Nettie Manz executed a deed conveying the property to Frank Kallas. Both of these deeds were delivered to Mr. Terwilliger by the grantor, with instructions to keep them until the death of the grantor and then to have them recorded and deliver them to Frank Kallas. The evidence shows that these instructions were strictly carried out. The reason for making the deed to Nettie Manz and having her immediately convey to

Frank Kallas is not very apparent from the reading of the testimony. This course may have been adopted in view of probable litigation between Frank Kallas and his wife, or it may have been for some other reason. There is no evidence whatever in this record that tends to support the charge that the execution of these deeds was procured through fraud or undue influence. On the contrary, the proof is clear that the grantor, after advising with her agent and confidential friend, Terwilliger, determined to execute these deeds, and that she did so freely and voluntarily to carry out her own desire to give her son Frank her property. The failure of plaintiff in error to offer any evidence fairly tending to establish fraud or undue influence warranted the trial court in withdrawing the issues from the jury and rendering a decree dismissing the bill.

It is next contended that there was not a sufficient delivery of the deed to Nettie Manz to pass the title to her. At the time the deeds were executed 'and delivered to Mr. Terwilliger, Mrs. Kallas, the grantor, executed an escrow agreement which recited that R. I. Terwilliger & Co., bankers, had received from Marcianna Kallas the two deeds in question, which were to be held by said Terwilliger & Co. until the death of Marcianna Kallas, and after her death to have said deeds recorded and then to deliver the same to Frank Kallas. The deeds were accordingly placed in the hands of Mr. Terwilliger and kept by him until after the death of the grantor, and then the escrow agreement was carried out. The unconditional delivery of a deed to an escrow holder, by which the grantor parts with all control and dominion over the instrument, with instructions to the holder to deliver the deed to the grantee after the death of the grantor, constitutes a good delivery and will pass the title to the grantee. (*Latimer* v. *Latimer*, 174 Ill. 418; *White* v. *Willard*, 232 id. 464.) Where a parent makes a deed intending to give the property described to a child, courts of equity are strongly inclined to uphold such con-

veyance, and will regard the intention of the grantor as of more importance than the mere manual possession of the deed. (*White* v. *Willard, supra.*)   In *Chapin* v. *Nott,* 203 Ill. 341, this court, on page 347, said: "The law has a regard for the relationship of the parties and the motives that are presumed to dictate such conveyances and the degree of confidence which the parties standing in such relation, as donors and donees of valuable property, are presumed to have, and in such case the presumption of law is that there was a delivery, and when brought in question the burden is upon the grantor, or those claiming adversely to the donee or beneficiary, to show clearly that there was no delivery." See, also, *Henry* v. *Henry,* 215 Ill. 205.

Plaintiff in error makes the point that under the escrow agreement the deed to Nettie Manz was never intended to come into her manual possession. This is a matter of no importance. When the deeds were delivered to the escrow holder and the grantor parted with all control over them the delivery was complete, and thereafter the escrow holder held the deeds as the agent and representative of those for whose benefit the subsequent acts were to be performed. In our opinion the evidence establishes a complete and valid delivery of the deeds in question.

Plaintiff in error makes some complaint of the rulings of the court upon the admission and exclusion of certain testimony. We do not deem these matters of sufficient importance to require consideration, since upon the entire record the court could not have done otherwise than to dismiss the bill. Any technical errors that may have been committed in this regard would not warrant us in reversing the decree.

Finding no error in the record the decree of the circuit court of Cook county will be affirmed.   *Decree affirmed.*