CORDA FRAME STEVENS, Appellant, *vs.* ELIZABETH A. STEVENS *et al.* Appellees.

*Opinion filed October 26, 1912—Rehearing denied Dec. 5, 1912.*

1. DEEDS—*a delivery is essential to the validity of a deed.* To make delivery, which is essential to the validity of a deed, the grantor must part with all dominion, power and control over the deed and must retain no right to reclaim or recall it.

2. SAME—*when the question of delivery is one of law.* Where the facts which are held by the chancellor to show a valid delivery of a deed are undisputed, the question presented to a court of review on appeal is whether the chancellor properly applied the law to the facts.

3. SAME—*when there is no valid delivery of deeds.* Where deeds are placed in the grantor's safety deposit box in a bank, in an envelope having a memorandum thereon stating that the deeds are to be held by the banker as a third party and delivered to the grantees after the grantor's death, but also stating that the deeds shall be subject to recall by the grantor at any time before his death, a delivery by the banker after the grantor's death is not a valid delivery.

4. SAME—*facts and circumstances must give way to express reservation of control.* Where the envelope containing the deeds has a memorandum thereon expressly reserving the grantor's right to recall them at any time before his death, all facts and circumstances which would otherwise be important as tending to show an intention to make a present delivery must give way to the reservation showing an express intention to the contrary.

5. SAME—*when the wife of the grantee is not estopped to deny validity of deeds.* The fact that the wife of the grantee of one of a number of deeds executed by the grantor to his children and grandchildren and delivered after his death, joins with her husband, for the purpose of releasing her inchoate right of dower, in a deed to the tract conveyed to him, does not, of itself, estop her to attack the validity of other deeds because of insufficient delivery.

CARTER and FARMER, JJ., dissenting.

APPEAL from the Circuit Court of Montgomery county; the Hon. THOMAS M. JETT, Judge, presiding.

HARRY L. BALLARD, for appellant.

HILL & BULLINGTON, LANE & COOPER, and MILLER & McDAVID, (PAUL McWILLIAMS, guardian *ad litem,*) for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

This bill was filed by Corda Frame Stevens, the appellant, in the circuit court of Montgomery county, for the partition of 597 acres of land in Montgomery and Bond counties and some town lots in Bond county, of which the bill alleges John S. Stevens, the grandfather of appellant, died seized. The court by its decree found that the said lands had been conveyed by Stevens during his lifetime, except 60 acres which had been omitted from certain of the deeds by mistake of the scrivener. Partition of this 60 acres was ordered and the bill was dismissed as to the remaining lands. From that decree this appeal has been prosecuted.

John S. Stevens died February 19, 1911, leaving surviving him Elizabeth A. Stevens, his widow; Mary C. Brooks, Permelia J. Root, Eliza A. Brooks and Sarah E. McPherson, his daughters; John A. and Commodore C. Stevens, his sons; Mina B. and Edward S. Armstrong, minor children of a deceased daughter; William S., Royal R. and Arthur Stevens, children of a deceased son; and Corda Frame Stevens, the appellant, child of a deceased daughter, as his only heirs. On January 24, 1901, Stevens and his wife executed a deed to William E. Brown, a son of Mrs. Stevens by a former husband, conveying to him 70 acres of land for the period of his natural life and the remainder to the children of John S. Stevens living at the date of the deed, their heirs and assigns. This deed was not delivered to any of the grantees therein named during the lifetime of the grantor, but, together with the deeds hereinafter mentioned, was thereafter placed in the private box of the grantor in the bank at Donnellson. On Janu-

ary 23, 1904, Stevens and his wife executed warranty deeds conveying portions of his real estate to his four daughters, two sons and the grandchildren William S., Royal R. and Arthur Stevens, and Stevens alone executed a deed to his wife conveying the town lots to her for her lifetime with the remainder to his children and their bodily heirs. Each of said deeds, except the one to Elizabeth A. Stevens, contained a reservation of some interest during the lifetime of the grantors, some of them providing for one-third of the annual product and others for life estates in the whole of the tracts conveyed. At the time he executed the deeds, in 1904, he also executed his last will and testament, whereby he made bequests of personal property to certain of his children and grandchildren and bequeathed to his wife a life interest in the remainder of the personal property, together with the rents provided for her from "certain lots of land which I have deeded to my sons." The clause of the will appointing the executors also contains this statement: "Having disposed of all my real estate this day to my heirs, dividing the same among them by warranty deeds as best I could." The will and the deeds were drawn by William J. Young and were executed at the home of the scrivener, no one being present, besides the grantors, except Young, his wife, and James E. Price, a witness to the will. Young died prior to the hearing of this cause. C. C. Mansfield, a banker at Donnellson, where Stevens resided, testified that after these deeds were executed Stevens came into his bank and offered him a sealed envelope, stating that it contained papers which William J. Young said would not be binding unless they were given to a third party to hold. Mansfield thereupon said to him: "You have a box here in the building; why not place them in that?" Then, after some further conversation, Stevens went into the vault and got his box. Mansfield then testified that neither the envelope nor the papers contained therein were in his hands at any time during

Stevens' lifetime and that he did not have a key to Stevens' box. After the death of Stevens the widow and certain of the children came to the bank and in the presence of Mansfield opened the box and examined its contents. Then for the first time Mansfield took actual possession of the deeds and distributed them to the various grantees, except the deed to William E. Brown, who at that time refused to accept it. On the envelope in which the deeds were contained was the following endorsement in the handwriting of William J. Young: "Warranty deeds made by John S. Stevens and Elizabeth A. Stevens, to be kept by C. C. Mansfield, of Donnellson, Ill., as a third party. Said deeds made to his or their heirs, and to be turned over to said heirs by the said C. C. Mansfield or his legal representatives after the death of the said John S. Stevens, subject, however, to his call at any time before his death." Neither the appellant nor the Armstrong children were named as grantees in any of these deeds. By the will appellant was bequeathed two notes of her father and mother, aggregating $400, and $150 in cash. During his lifetime John S. Stevens repeatedly stated that he had deeded his lands to his children and certain of his grandchildren, and that he had done so to enable them to make such improvements upon them as they might desire. He made the same statements in reference to his step-son. On the other hand, after the execution of the will and of the deeds he continued to lease his lands to his children and others by written leases, which provided for the delivery of possession at the termination of the leases. He paid the taxes, executed oil leases to certain of the lands and sold the coal thereunder.

The principal question to be determined is whether there was a delivery of the deeds by Stevens in his lifetime. A delivery is essential to the validity of a deed, and the law is so well settled as to what constitutes delivery that an extended discussion of the question or the

citation of authorities should not be necessary. To make delivery of a deed the grantor must part with all dominion, power and control over it and must retain no right to reclaim or recall it. Among the many cases in this State in which this doctrine has been stated are *Stinson* v. *Anderson*, 96 Ill. 373; *Weaver* v. *Weaver*, 182 id. 287; *Hawes* v. *Hawes*, 177 id. 409; *Munro* v. *Bowles*, 187 id. 346; *Taylor* v. *Seiter*, 199 id. 555; *Lange* v. *Cullinan*, 205 id. 365; *Spacy* v. *Ritter*, 214 id. 266; *Noble* v. *Tipton*, 219 id. 182.

The question whether a deed has been delivered is one of fact, and the finding of the chancellor thereon, based on proof which is contradictory, will not be disturbed unless the evidence discloses that it is palpably wrong. But in cases such as this, where the facts bearing on the question of delivery are undisputed, the question presented to this court on review is whether the chancellor has properly applied the law to the facts. Where the grantor places deeds in the hands of a third party, together with a written memorandum expressly retaining the right to recall them at any time, and such deeds are so held until the death of the grantor, there can be no question of a failure to make a valid delivery. The fact that this was a voluntary settlement upon those having a claim upon his bounty, the fact that the grantor repeatedly stated that he had deeded his real esate to his children and grandchildren and that the lands belonged to them, that he stated in his will that he had made the deeds and that he reserved a life estate for himself and wife in the lands deeded, would all be important on the question of delivery in this case in the absence of the memorandum found upon the envelope in which the deeds were contained. But all these facts must give way to the express reservation of the right to the grantor to recall or reclaim the deeds at any time. The deeds were not operative for want of delivery.

The only other point presented on this appeal is whether the appellant is estopped to question the validity of the deeds. Appellant is the wife of Arthur Stevens, who is also a grandchild of John S. Stevens. By one of the deeds 58 acres of land were conveyed to William S., Royal R. and the said Arthur Stevens. This deed was delivered to them by Mansfield, and thereafter Royal R. and his wife conveyed his interest in the 58 acres therein described by quit-claim deed to William S. Arthur and William S. thereafter conveyed this tract by warranty deed to said Commodore C. Stevens, the appellant joining in the deed with Arthur, as his wife. This 58 acres was not sought to be partitioned in this proceeding. The appellant joined in this deed simply as the wife of Arthur Stevens and for the purpose of releasing her inchoate right of dower, if any, in the premises. It is not shown that she received any of the proceeds of the sale. By thus joining in the deed with her husband she merely released her dower rights and was not even bound on the covenants of warranty. Commodore C. Stevens dealt with the husband as the owner of the real estate, and it cannot be seriously contended from the mere fact that the appellant joined in the deed for the purpose of releasing her inchoate right of dower, that Commodore C. Stevens was deceived as to the true situation or that appellant thereby acknowledged the validity of the deeds.

The decree of the circuit court is reversed and the cause remanded to that court for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

Mr. JUSTICE CARTER, dissenting:

On the facts presented in the record I cannot concur in the foregoing opinion. I think the deeds were delivered.

The rule is, that a deed does not take effect unless it is delivered by the grantor during his lifetime, either directly

256 — 10

or in escrow. Such delivery "may be by acts without words or words without acts, or both, and anything which clearly manifests the intention of the grantor that a deed shall presently become operative and effectual, that he loses control over it and the grantee is to become possessed of the estate, constitutes a sufficient delivery." (*Hill* v. *Kreiger,* 250 Ill. 408.) The delivery of a deed is essentially a matter of intent. The real test in each case is whether the grantor, as shown by his acts or words, or both, intended delivery. Each case must therefore be adjudged by its own facts and circumstances. (*Potter* v. *Barringer,* 236 Ill. 224; 9 Am. & Eng. Ency. of Law,—2d ed.—154, and cases cited.) In determining the question whether a deed of voluntary settlement has been delivered, the grantor's intention to vest the title in the grantee is of more importance than the mere manual possession of the deed. (*DeGraff* v. *Manz,* 251 Ill. 531; *Riegel* v. *Riegel,* 243 id. 626; *Baker* v. *Hall,* 214 id. 364.) A deed of voluntary settlement may therefore be effective to vest the title though it is retained in the grantor's possession until his death, if other circumstances do not show an intention contrary to that expressed in the deed. The presumption in favor of the delivery of a deed in case of a voluntary settlement is much stronger than in an ordinary case of bargain and sale, and the burden of proof is upon one claiming adversely to show that there was no delivery. (*White* v. *Willard,* 232 Ill. 464; *Hill* v. *Kreiger, supra; Chapin* v. *Nott,* 203 Ill. 341; *Valter* v. *Blavka,* 195 id. 610.) The fact that a deed in a voluntary settlement reserves a life estate in the grantor raises a strong presumption that he intended that the title should immediately vest in the remainder-men, as otherwise there would be no necessity for the reservation. *Hill* v. *Kreiger, supra; Riegel* v. *Riegel, supra; Baker* v. *Hall, supra; Valter* v. *Blavka, supra.*

John S. Stevens attempted to give these deeds to the banker, Mansfield. At the latter's suggestion they were

put in Stevens' deposit box. It would appear from this record that Stevens by so doing did not intend to make any change in the legal effect of his acts,—that is, he intended the putting of the deeds in the box to have the same effect as if they had been placed in Mansfield's hands. The change as to where the deeds were placed was intended merely for convenience and not as changing the character of the transaction. If Mansfield had taken and kept the deeds, as requested, until after Stevens' death, then surely this would have constituted delivery, unless the words endorsed on the back of the envelope containing the deeds, "subject, however, to his call at any time before his death," would defeat such delivery. There is no testimony that Stevens knew these words were on the envelope or had caused them to be placed there or intended that the deeds should be kept by Mansfield on any such condition. On the contrary, all he said to Mansfield indicated that the deeds were to be left with him unconditionally; that he was trying by his acts to make a valid delivery of the deeds in escrow; that the very purpose of leaving them with a third party was to constitute a legal delivery.

It is true, Stevens executed certain leases to his sons after executing these deeds. In my judgment these leases were the mere carrying out of the provisions of the deeds as to the one-third proceeds going to the grantor. The fact that there is evidence tending to show that Stevens paid the taxes while he was living and remained in possession of the property is not inconsistent with the delivery of these deeds. Neither is the fact that he made a deed to coal rights and entered into certain oil leases. If it was his intention to deliver the deeds and he actually performed acts sufficient to constitute a delivery, the deeding of the coal rights and leasing of the oil rights could not re-invest him with the title. *Potter* v. *Barringer, supra.*

"A voluntary settlement, fairly made, is always binding in equity upon the grantor, unless there be clear and

decisive proof that he never parted, nor intended to part, with the possession of the deed; and even if he retains it, the weight of authority is decidedly in favor of its validity, unless there be other circumstances, besides the mere fact of his retaining it, to show it was not intended to be absolute." (*Souverbye* v. *Arden,* 1 Johns. Ch. 240.) These words of Chancellor Kent are very much in point on the questions here involved. The rule laid down by him is, in my judgment, supported by the great weight of authority in this and other jurisdictions.

Mr. JUSTICE FARMER, also dissenting.