MARY A. POTTER, Appellant, vs. MATTIE J. McDAVID BAR-
RINGER, Appellee.

*Opinion filed October 26, 1908.*

1. DEEDS—*when a deed is presumed to have been delivered.*
Where a deed, the due execution and acknowledgment of which is
not denied, is in the possession of the grantee at the time of the
grantor's death, the presumption is that it has been delivered, and
such presumption can be overcome only by convincing evidence.

2. SAME—*when a deed must be regarded as delivered.* A duly
executed and acknowledged deed produced by the grantee after the
grantor's death, and which is shown by competent witnesses to
have been in the grantee's possession long prior to the grantor's
death, must be regarded as well delivered, even though the grantor
retained possession of the land, renewed a mortgage, sold coal
rights and received the rents and profits during her lifetime.

3. SAME—*when verbal understanding does not invalidate deed.*
An unconditional deed is not invalidated by the fact that at the
time of its delivery there was a verbal understanding that the
grantor should retain possession and control of the premises dur-
ing her lifetime and that the grantee would not record the deed
until the grantor's death.

4. SAME—*cancellation of delivered deed does not re-invest the
grantor with title.* After a deed has been delivered the grantor
cannot cancel it without the grantee's consent, and even then the
grantor will only acquire the equitable, and not the legal, title to
the property.

5. EVIDENCE—*when testimony by attorney is not incompetent as
being privileged communications.* Where an attorney is called
upon by his client not for counsel or advice but merely to draw a
deed in a certain manner, the statements of the client as to her
reasons for wanting the deed drawn are not privileged, and the
attorney may testify as to the delivery of the deed and the under-
standing upon which it was delivered.

APPEAL from the Circuit Court of Montgomery county;
the Hon. S. L. DWIGHT, Judge, presiding.

This is an appeal from a decree entered by the circuit
court of Montgomery county dismissing, for want of equity,
a bill filed by appellant, Mary A. Potter, against appellee,

Mattie J. McDavid Barringer, for the cancellation of a
deed and to quiet title to certain land in that county.

Mary A. McDavid was at one time the owner of the
land in question. Her husband was James B. McDavid,
and they had one son, William, who was evidently an able
and likable young man but was somewhat dissipated. Wil-
liam married the appellee, whose maiden name was Mattie
Wilson and who had inherited from her father some six
hundred acres of land. This property, the evidence shows,
she had lost, before the time of the transactions now
in question, by endorsing notes with her husband and his
father. William McDavid, appellee's first husband, died in
the spring of 1903, his father dying before that date. Mary
McDavid and appellee for some time leased and ran a hotel
at Hillsboro, the furnishings of the hotel being largely the
property of the former. Appellee seems to have transacted
most of the business in connection with running the hotel,
Mary McDavid making her home there. The deed which
is here sought to be set aside is dated November 2, 1903,
and is a statutory warranty deed without any conditions
on its face, signed and acknowledged by Mary McDavid,
conveying to Mattie J. McDavid the house and lots in
Hillsboro and one hundred and twenty acres of the farm
land included in the deed of trust. The acknowledgment
was taken November 2, 1903, by James B. Barringer, no-
tary public, who was then, and had been for some twenty-
five years, cashier of a bank at Hillsboro. In October,
1904, he married Mattie J. McDavid, but there is nothing
in the record to show that this marriage was anticipated
at the time the acknowledgment was taken.

The testimony in reference to the execution and delivery
of this deed is substantially as follows: Judge Lane, who
had practiced law in Hillsboro about forty-four years, tes-
tified that on November 1, 1903, Mary McDavid came to his
office and told him that Mattie was about to go to St. Louis
as a house-keeper, and she (Mrs. McDavid) did not want

her to do this; that Mattie had lost her fortune, and that she (Mary McDavid) wanted to make a straight deed to Mattie to the house and lots and one hundred and twenty acres of the farm land; that he made pencil notations of what she wanted, but as it was nearly evening the matter was put off until the next morning; that on the following morning, not wishing to write the deed with a pen and there being no one then in the office who could operate the typewriter, he took the paper containing the description down to the bank, and Frank McDavid, at his request, wrote the deed on the typewriter; that he (the witness) then took the deed up to the hotel and gave it to Mary McDavid, and asked her to take it to the bank and sign and acknowledge it before Mr. Barringer; that as she did not return for some time he went to look for her, and met her coming back with the paper in her hand, signed and acknowledged; that at her request he returned to the hotel and they found Mrs. Mattie J. McDavid, and he said to her, in the presence of Mary McDavid: "Mattie, your mother-in-law wants to convey this deed to you; she wants to reserve a life interest in this land,—the rents and profits, and all that kind of thing,— and this deed is not to be put on record until she dies, and she wants you to stay here; are you willing to accept this deed on that condition?" He stated that Mattie said she was, and he thereupon handed the deed to her and came out; that he gave it directly into her hands under the direction and in the presence of Mary McDavid, who was standing by and approved all that was said, and who made the remark that she did not want to see Mattie working as a hired woman for anybody. Frank McDavid, assistant cashier of the bank, testified that he was a nephew of Mary McDavid and at Judge Lane's request wrote the deed in question on the typewriter; that she came to the bank and signed and acknowledged it before Mr. Barringer and that he (McDavid) signed as a witness; that he saw the deed a number of times after that, in the bank, among the papers

of appellee. Joel McDavid, president of the bank, testified that he saw the deed in question several times in a small bundle of papers belonging to appellee which were deposited by her for safe keeping in the bank.

During the time Mary McDavid and her daughter-in-law were living together at the hotel they were evidently on fairly good terms, with perhaps occasional disagreements. In July, 1904, they sold their interest in the hotel, and sometime thereafter Mary McDavid went to live at the Barringer residence.

In October, 1904, as has heretofore been stated, Mattie J. McDavid married Barringer. Mary McDavid was not pleased with this, and she and her daughter-in-law seem to have become much more estranged after the marriage than before. Shortly before the marriage Mary McDavid went to live at Shoemaker's and remained there until March, 1905, when she moved to her own home, and appellant, Mary A. Potter, her niece, came there to live and remained with her until her death. Mary McDavid continued to treat the land as if she was the owner. In March, 1906, she renewed a mortgage on the farm for $1700, taking up one given in 1902, which had become due. In August, 1907, she sold a coal option for the underlying mineral on the farm for about $1200, James Barringer, the husband of appellee, assisting her in this transaction. June 8, 1907, she made her will. She was then seventy-nine years old. The will contained some personal bequests and some provisions for cemetery lots, amounting to about $1200. It also stated: "I give and bequeath to Mattie J. McDavid Barringer and James B. Barringer each the sum of one dollar, and nothing more." It also gave the daughter of her grandson her house and lots in Hillsboro, subject to the payment of the personal and cemetery bequests above mentioned. It also gave Mary A. Potter, appellant, in "consideration of her kind treatment and care" during the later years of testatrix's life, all of her household and kitchen furniture and per-

sonal property not otherwise bequeathed and the one hundred and twenty acres of land in question in this proceeding, on condition of her paying the mortgage indebtedness thereon and $250 to a certain church. The will was filed for probate October 7, 1907, and on the same date the deed in question was filed. This bill was filed January 8, 1908.

L. V. HILL, and THOMAS M. JETT, for appellant.

AMOS MILLER, and GEORGE R. COOPER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant insists that the testimony of witness Lane was inadmissible as privileged communications given him as an attorney. Even if this testimony be not competent, we think other competent evidence in the record upholds the finding of the chancellor that the deed in question had actually been delivered. Where a deed duly executed is found in the hands of the grantee there is a strong implication that it has been delivered, and only clear and convincing evidence can overcome this presumption. (*Blake* v. *Ogden,* 223 Ill. 204; *Tunison* v. *Chamblin,* 88 id. 378.) This deed was in the possession of the appellee previous to the death of Mary McDavid, as is shown clearly by the testimony of the two McDavids, and the proof shows, without controversy, that it was in appellee's possession after Mary McDavid's death. On this record there is no dispute as to the fact that the deed was duly signed and acknowledged by the grantor.

Appellant seemingly contends that the deed is not genuine, or if it is genuine that it was canceled, because Mary McDavid made the statement that appellee did not have any papers signed by her. This statement can have no force against the positive testimony of the signing, acknowledging and witnessing of the deed, together with the fact that it remained in the possession of appellee from that time until it was recorded. The testimony tends to show that Mary

McDavid changed her mind frequently and that her memory was not the best. If, however, she actually delivered the deed, she could not cancel it without the consent of the grantee, and even then the grantor would only acquire an equitable, and not a legal, title to the property. (*Fletcher* v. *Shepherd,* 174 Ill. 262; *Duncan* v. *Wickliffe,* 4 Scam. 452.) There is no proof of any character that she tried to cancel this deed. The fact that the grantor retained possession of the property, renewed a mortgage thereon, sold a coal option for minerals under the land, controlled the property and received the rents, issues and profits during her lifetime, if the deed was actually delivered to appellee, could not re-invest her with the title. This court has held that even though deeds were found in the grantor's possession after his death, and it was shown that he had retained possession and control of the property after making the deeds, those facts cannot overcome evidence of delivery, where the grantor understood that he was conveying the absolute title to the property as a voluntary settlement. (*Ward* v. *Conklin,* 232 Ill. 553.) The delivery of a deed is an essential part of its complete execution and is almost wholly a matter of intention. For the purpose of showing intention parol evidence is admissible, and if by such evidence it is shown that a deed not delivered was not intended to operate presently, but only upon the grantor's death, it is uniformly held to be only a testamentary disposition. (*Oswald* v. *Caldwell,* 225 Ill. 224.) If such deed is not to take effect until the death of the grantor it is void. (*Wilson* v. *Wilson,* 158 Ill. 567; *Benner* v. *Bailey,* 234 id. 79.) But where a deed has been actually delivered to the grantee in the lifetime of the grantor, even though it provides that it is not to take effect until the grantor's death, it will be sustained as a present grant of future interest. (*Noble* v. *Fickes,* 230 Ill. 594.) In *Shackelton* v. *Sebree,* 86 Ill. 616, this court held that a deed containing a provision that it is not to take effect "until after my decease,—not to be re-

corded until after my decease," but which has been delivered
to the grantee in the lifetime of the grantor, passed a vested
remainder to the grantee in fee.   To the same effect are
*Harshbarger* v. *Carroll,* 163 Ill. 636, *Bowler* v. *Bowler,* 176
id. 541, *Venters* v. *Wickins,* 224 id. 569, and *White* v. *Willard,* 232 id. 464.

The deed now under consideration is absolute on its
face.   Appellant bases her argument that there was a con-
dition attached to it, on the testimony of Judge Lane, while
contending, at the same time, that Lane's testimony is in-
admissible.   Lane stated that he was called in by Mary Mc-
David, not to advise with her as to what she wanted, but
was directed by her to draw a straight deed to her daughter-
in-law, she giving her reasons why she wanted this done;
that after the deed was drawn she asked him if she could
still retain the possession and income of her property until
her death, and he replied that it could be done.   Appellant in
this connection insists that Lane also testified that the under-
standing was that the deed was not to take effect until after
the death of Mary McDavid.   While on cross-examination
he did say something that would furnish a basis for this con-
tention, taking all of his evidence together we think it is a
fair conclusion that he did not intend to make such a state-
ment, for he says on re-direct examination, when his atten-
tion was directed to this point, "There was not a word said
about when the deed was to take effect—not a word."   If
he was a mere scrivener in drawing this deed, as contended
for by the appellee, then his testimony was not privileged.
(*Champion* v. *McCarthy,* 228 Ill. 87, and cases there cited.)
We are inclined to think, under these authorities, the evi-
dence was competent.   That being so, there cannot be the
slightest question as to the actual delivery of the deed.   And
even if it was accompanied by the verbal understanding con-
tended for by appellant, still the title passed, upon the well
settled principle that a deed voluntarily placed in the hands
of a grantee is never to be considered as an escrow.   (*Weber*

v. *Christen,* 121 Ill. 91.)   A deed cannot be delivered to
the grantee in escrow.   In such case it must be delivered
to a stranger, otherwise the deed becomes absolute at law.
(*Baker* v. *Baker,* 159 Ill. 394.)   A verbal understanding
that a deed is to take effect only on certain conditions will
not defeat the passing of title from the grantor to the gran-
tee if the deed is actually delivered.   (*Fletcher* v. *Shepherd,
supra; Blake* v. *Ogden, supra.*)   While it is not competent
to control the effect of a deed by parol evidence when it has
taken effect and been delivered, it is competent to show that
the deed, although in the grantee's hands, has never, in fact,
been delivered.   The declarations of a grantor in a deed
when the grantee is not present cannot be admitted for the
purpose of invalidating the deed.   Parties making deeds
cannot invalidate them by parol.   (*Francis* v. *Wilkinson,*
147 Ill. 370, and cases cited.)   Such declarations are only
competent for the purpose of showing the intention of the
grantor as to the delivery of the deed.   The only evidence
in this record that the deed was not, in fact, delivered, was
the statement of Mary McDavid that she did not intend to
leave appellee anything, and letters and conversations of
appellee and her husband which it is claimed tend to show
that they did not expect anything from Mary McDavid, to-
gether with the fact that she retained possession of the
property and entered into certain transactions concerning
it, as herein stated.   We do not think this evidence is of
such a character as to overcome the presumption that the
deed, actually in the possession of the grantee before and
after the death of Mary McDavid, had been delivered.   *Mc-
Cann* v. *Atherton,* 106 Ill. 31.

Our conclusion is, that the evidence in this record, with
or without the testimony of witness Lane, justifies the con-
clusion that the deed in question was actually delivered by
the grantor to the appellee herein.   Considering the facts in
this record, nothing is said in *Cline* v. *Jones,* 111 Ill. 563,
*Brown* v. *Brown,* 167 id. 631, *Bovee* v. *Hinde,* 135 id. 137,

and other decisions of like nature cited and relied on by the appellant, that in any way conflicts. Our conclusion is further strengthened by the fact that the chancellor, who heard the evidence in open court, saw the witnesses and their manner of testifying and is thus better able to judge of the weight to be given such testimony, has reached the same conclusion. *Biggerstaff* v. *Biggerstaff*, 180 Ill. 407; *In re Estate of Kohley*, 200 Ill. 189.

The decree of the circuit court will be affirmed.

*Decree affirmed.*