LYDIA M. FLUKE, Appellee, *vs.* MARY E. CRANE *et al.*—
(BRADEN M. ADAIR, Appellant.)

*Opinion filed February 21, 1914—Rehearing denied April 9, 1914.*

1. DEEDS—*presumptions are in favor of delivery of a voluntary conveyance to one standing in relation of child.* Where a deed is a voluntary conveyance to the child of the grantor, or one standing in the relation of a child, and the grantor retains a life estate, the deed will be presumed to have been delivered, in the absence of evidence to the contrary, even though it was not recorded.

2. SAME—*one alleging undue influence has the burden of proving such charge.* One who seeks to set aside a deed as having been made through undue influence has the burden of proving the charge alleged.

3. SAME—*what does not tend to prove the charge of undue influence.* The mere fact that the friend of the grantor who suggested the name of the attorney who drew the deed was a distant connection of the grantee does not tend to prove undue influence, where the deed was a voluntary conveyance reserving a life estate in the grantor, and was made in pursuance of the grantor's long expressed intention of leaving her property to the grantee, who was unknown to the attorney who drew the deed and was not present when the deed was made.

APPEAL from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

ROBERT F. KOLB, for appellant.

EDWARD F. COMSTOCK, and CHARLES C. SPENCER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, Lydia M. Fluke, one of the heirs-at-law of Clarissa Spalding, filed her bill in this case in the superior court of Cook county against her sister, Mary E. Crane, and her brother, Edwin A. Phelps, the other heirs-at-law, and James H. Hooper and the appellant, Braden M. Adair, for the partition of premises in Cook county alleged to have been owned by Clarissa Spalding at the time of her death, and to set aside deeds made by her to the appellant, Braden M. Adair, and James H. Hooper, and from Adair to Hooper, as clouds upon the title. The appellant, Braden M. Adair, filed a cross-bill asking for partition of the premises conveyed to him in which the heirs-at-law had interests, and to remove as clouds the deeds from himself to Hooper. The bill charged as reasons for setting aside the deeds, mental incapacity of Clarissa Spalding, undue influence exercised by Adair, Hooper and Laura Buchanan, and want of delivery. The chancellor heard the evidence, dismissed the cross-bill, set aside all the deeds, found that the heirs-at-law of Clarissa Spalding were the owners of the premises and ordered partition according to their respective interests.

The facts proved are substantially as follows: Clarissa Spalding was a widow seventy-eight years of age when the series of transactions in question began, in 1909. She owned a lot in Chicago, called the Hermitage avenue property, improved with a flat-building. She occupied the first flat and rented the second to tenants. She also owned property on Sixty-eighth street, improved with a residence and rented; other property on Washington boulevard, improved with a residence and rented; and an undivided one-fourth interest inherited from her father, with her brother and sisters above named, in unimproved property on Thirty-ninth street, and a farm of 160 acres in Cook county. During her marriage she had two sons, one of

whom died over twenty-five years ago. The appellant, Braden M. Adair, was a member of her Sunday school class and became a member of her family when he was fifteen years old,—about the time of the death of her first son. Soon after that the youngest son died, and Adair occupied the place of a son from that time until her death. She had been a widow about twenty years. Her father lived with her until his death some years ago, and Adair cared for him in his final illness, and also cooked, washed, scrubbed, waited on table and did the work of a housemaid during many years before the death of Mrs. Spalding. She called him son and he called her mother, and she often spoke of him to her neighbors as her son or her adopted son, and said that he was all she had; that she thought as much of him as she did of her own children, and when her children and husband died all her love went to him. She frequently told her friends that what she left would go to him; that she was going to provide for him and leave her property to him,—all of which was proved by a number of her intimate friends, who were entirely disinterested. At one time she made an appointment with Anna B. Werner, who had boarded with her, to go to a lawyer, Judge Graham, to see about deeding her property to Adair, but it rained and they did not go, and she afterward told the same witness that she had fixed up the business with Adair. On August 25, 1909, Laura Buchanan, a friend of Mrs. Spalding, recommended James H. Hooper to her as a lawyer and accompanied her to Hooper's office. Hooper had been a lawyer but had been disbarred in 1905. (*People* v. *Hooper,* 218 Ill. 313.) Mrs. Spalding told Hooper that for ten or twelve years she had been wanting to arrange for the proper support and care of Adair, who had been admitted into her family when he was fifteen years old, and who after the death of her sons had taken their place in her affections and had lived with her and done her housework. Hooper suggested that she should

make a will, but she objected because her relatives would break it or attempt to break it. Hooper talked about a deed, and she said that she did not want to make a deed to Adair outright because she was not sure he would live longer than she would, and it was suggested that she should make a deed reserving a life estate and leave it in Hooper's possession until she died, without recording it. She owned an undivided interest in certain properties above stated, and she asked Hooper whether, if she made such a deed, she could transfer the property in case the other heirs got a chance to sell it and whether she would have control of the property. Hooper told her that so long as the deed was not recorded she could transfer a good title to her property to a purchaser. She directed Hooper to draw a deed giving Adair a life estate after a life estate reserved to herself, and gave as a reason that Adair had had property and had spent it and she did not want him to spend and squander this, and only wanted him to have the income from the improved property, and a house to live in, until his death. She did not have a description of her property and came back to the office, alone, on August 27, 1909, and brought tax receipts, from which Hooper took descriptions and drew a warranty deed conveying a life estate to Adair and reserving a life estate to herself. This deed included all her real estate except the Washington boulevard property, and she signed and acknowledged it and left it with Hooper to keep until after her death, when he was to give it to Adair. On September 3, 1909, Mrs. Spalding again came to Hooper's office, when he wrote a deed conveying to Adair, in fee simple, that same property described in the previous deed. She executed this deed and gave it to Hooper and told him to keep it until after her death and then give it to Adair. On October 21, 1909, Charles H. Crane, husband of the defendant Mary E. Crane, drew a paper transferring from Mrs. Spalding to his wife stocks in various corporations, amounting to over

$6000, to be signed by Mrs. Spalding, in which he inserted a statement that she was very old and incapable of properly conducting her business affairs and made the transfer to her sister for the proper management of her affairs. Mrs. Crane therein agreed to collect the income from the stocks and pay it to Mrs. Spalding and re-convey the stocks when requested to do so and on the death of Mrs. Spalding to re-convey the stocks to the estate, making such disposition of the same as might be directed by the will of Mrs. Spalding. The instrument was signed by Mrs. Crane and Mrs. Spalding, and Hooper testified that when Mrs. Spalding came to him on September 3, 1909, to make the second deed, she told him about Mrs. Crane getting the stocks and that she wanted to take the estate away from them and give it to Adair after her death. Hooper was evidently mistaken as to the time when that statement was made, because the assignment of stocks was after the conveyance of September 3, but there was another transaction when that statement might have been made. On November 18, 1909, Mrs. Spalding again called on Hooper and asked him if he still had the deeds, and said she wanted to make some different arrangement and wanted to give Adair a life estate in the improved property and to give one-third, after his death, to Laura Buchanan. They talked about a trust and trust company and defending the conveyance against the other heirs, and Hooper told her that a lawyer would charge one-third of the estate to defend it. Hooper then drew, and she executed, a deed conveying to Hooper the same property as the deed of September 3 but reserved a life estate to herself. Hooper's understanding was that Laura Buchanan was to have one-third after the death of Adair and he was to have one-third for defending the title, but he testified on the hearing that he had no beneficial interest and claimed no right, interest or title in the premises. On February 28, 1911, Hooper wrote a letter to Adair, telling him that he held a warranty deed from

Mrs. Spalding to him of her property, which he was holding subject to Adair's order; that he had written to him about a year before that the papers were there for him whenever he should call, and that he should bring the letter with him as a means of identification. On March 2, 1911, Hooper called on Mrs. Spalding, at her request, and made a deed of the Washington boulevard property to Adair, which had been omitted in the deed of September 3, 1909. Mrs. Spalding died on December 1, 1911, and on December 5 Adair made two deeds to Hooper, one conveying all the property except the farm property, reserving a life estate in Adair, and the other conveying absolutely the farm property, without any reservation. After the death of Mrs. Spalding the deeds were put on record.

There was an attempt to prove that Mrs. Spalding was not mentally capable of transacting her business affairs or making the conveyances, but the attempt was a failure. Mary E. Crane and her husband, Charles H. Crane, and their son and daughter, and Edwin A. Phelps, gave opinions of that kind and Crane had put in the paper transferring the stocks a somewhat similar statement, but his testimony and that of his wife was materially affected by the fact that they engaged in a transfer, claimed title to the stocks under it, and agreed to a re-conveyance at the request of Mrs. Spalding or to make such disposition as she might provide for in her last will and testament. The complainant also called as a witness Mrs. Spalding's doctor, who said that she transacted her business with him all right, so far as there was any; that she talked intelligently and seemed to know what she was talking about; that, like himself, she would want a competent and honest lawyer to conduct matters of importance, like transferring real estate; that he did not think that either he or she would be capable of understanding the legal nature of a deed or abstract, but that she would know that a deed transferred property and was the proper method. She had bronchial

asthma and rheumatism, but they were not diseases of the mind and had no effect on her mental capacity. Mr. Crane represented the four heirs, paid the taxes on the property owned in common and did some other minor things for Mrs. Spalding, but she transacted her business intelligently, rented her houses and collected the rents. She was regarded as entirely capable by all disinterested witnesses, and the finding that she was mentally incapable was contrary to the evidence.

On the question of undue influence there was nothing tending, in any degree, to show the exercise of any influence by any person in the making of the first deed, but, on the contrary, what was done not only corresponded with an intention which had been declared for many years but was the most natural arrangement under the circumstances. That Adair stood in the relation of a son to Mrs. Spalding, that she regarded herself as under great obligation to him, and that she had long entertained an intention to provide for him, was uncontradicted. There was no evidence tending to prove that Adair had anything to do with the execution of the deed or knew of its execution. Laura Buchanan went to the office of Hooper with her when the deed was determined upon, but she took no part in the matter and was not even a relation of Adair, the only connection being that her niece was his cousin. Hooper at that time had no interest in the matter and did not know Adair. On February 28, 1911, he asked Adair to bring his letter with him to identify himself. When the deed was made no one was present except Hooper and Mrs. Spalding. The burden of proof was on the complainant to prove undue influence, and as to the first deed she furnished no evidence which would raise suspicion of such influence. As to the later deeds, it was necessary to furnish some proof besides the fact that Hooper was connected with them, and there was some evidence of that character, consisting of the facts that the transaction differed from the

plan which Mrs. Spalding had long entertained, and that, beginning with the deed of November 18, 1909, Hooper was working for himself. Without going into those matters at length, our conclusion is that the chancellor was perhaps justified in drawing an inference of undue influence on the part of Hooper in reference to the conveyances made after the first one.

The court found that the deeds were never delivered, but the evidence would not justify that finding. Disregarding the deeds made after the first one, that deed was a voluntary conveyance by Mrs. Spalding to one whom she regarded as a son and she retained a life estate. Every presumption is in favor of the validity of a voluntary conveyance made as a provision for one who stands in such a relation. (*Sears* v. *Vaughan,* 230 Ill. 572.) Mrs. Spalding retained a life estate, and the presumption was that the deed was delivered. (*Potter* v. *Barringer,* 236 Ill. 224; *Spencer* v. *Razor,* 251 id. 278.) Hooper's letter to Adair is the best evidence of Hooper's understanding and the capacity in which he held the deed, and it is quite conclusive that there was a delivery. Mrs. Spalding intended that the deed should not be put on record, having in mind, particularly, the possible sale of the property in which she had an undivided interest, and Hooper told her that if the deeds were not recorded she could still convey a good title, which was correct as a matter of law. Even if the deed was delivered but not recorded, a *bona fide* purchaser without notice would have a good title. The evidence did not establish that the deed was not delivered.

The decree is reversed and the cause remanded to the superior court, with directions to enter a decree in accordance with the findings herein expressed, finding appellant, Braden M. Adair, to be the owner of a life estate in the real estate described in the first deed, with a reversion after the life estate in the heirs-at-law of Clarissa Spalding.

*Reversed and remanded, with directions.*