STEVENSON v. HARRIS ET AL.

[No. 18,454. Filed March 30, 1954.]

*Paul F. Mason,* of Rockport and *William L. Mitchell,* of Evansville, for appellant.

*Robert S. Wagoner* and *L. N. Savage,* both of Rockport, and *W. K. Weyerbacher,* of Boonville, for appellees.

CRUMPACKER, C. J.—This appeal is predicated upon the contention, *inter alia,* that there is insufficient evidence in the record to support the trial court's finding that a certain warranty deed dated October 20, 1931, from one Katherine Stevenson to the appellant was never delivered with the intention of rendering it presently operative for any purpose and that the grantor intended it to be testamentary in effect and, not having been executed in conformity to the law governing the execution of wills, it is void. If this contention prevails, the appellee Harris must lose and the judgment of the trial court reversed as to him, it being conceded by all parties that if said deed is not subject to the above infirmities said appellee has no interest in the land to which he seeks to establish title by these proceedings. The appellee Farmers State Bank of Rockport, Indiana, holds a mortgage on said land and was joined as a party

defendant below to answer to its interests, but as no one questions the validity of said mortgage nor complains of the court's decree in respect thereto, no further discussion of that phase of this appeal will be. undertaken and the word "appellee" hereafter will be understood to refer to James W. Harris, Jr., exclusively.

The pertinent evidence, which in any way tends to support the court's findings above indicated, may be summarized as follows: One Arch Stevenson, late of Rockport, Spencer County, Indiana, died intestate in 1925, the owner of two hundred acres of farm land in said county. He left surviving, as his sole and only heirs at law, his widow Eva L. Stevenson, the appellant herein, and a daughter Katherine Stevenson, then a minor about 15 years of age, each of whom thereby inherited an undivided one-half of said land as tenants in common. Shortly thereafter the appellant was appointed guardian of the person and estate of her daughter Katherine and as such assumed control and management of said farm land. Desiring that Katherine should receive a college education the appellant, as such guardian and with the court's approval, borrowed $1,000 from what is now the Farmers State Bank of Rockport for that purpose and, to secure said loan, mortgaged to said bank her ward's undivided one-half interest in said land. After reaching her majority Katherine continued to live with her mother in the family home in Rockport and on October 20, 1931, being single and of full age, she made the deed which is the subject of this litigation and by which she ostensibly conveyed to the appellant her half of the land inherited from her father. The only evidence as to what actually occurred immediately prior to and at the time of the execution of said deed is as follows: Katherine and her mother went to the home of Minnie D. Snider, a notary public in and for Spencer County, where Katherine said,

"I want to make a deed to mother for my interest in real estate." The notary then asked Katherine for a description of the land involved and Katherine gave it to her. She then sat down to her typewriter and prepared a warranty deed which she gave to Katherine who first examined it and then signed and acknowledged it in the presence of said notary who affixed her signature and seal thereto and handed it back to Katherine who thereupon gave it to the appellant with the following words: "Well, Mother, here is the deed."

Three days after Katherine died on September 25, 1949, the appellant caused said deed to be recorded with instructions that no publicity be given the incident. The record is silent as to who had possession and control over it during the 18 years that intervened between its execution and recording, nor is there any evidence that during all those years Katherine made any effort to retrieve the deed or disaffirm its validity. On November 16, 1931, Katherine married one John Stuteville who thereupon took residence with his wife in the appellant's home in Rockport. On August 5, 1937, Katherine and her husband Stuteville, together with the appellant, joined in the execution of a gas and oil lease covering the land in controversy and an additional 40 acres in which Katherine had an undisputed interest. Later that same year the Stuteville marriage was dissolved by divorce and Katherine then married one James W. Harris, Sr., whose son by a former marriage is the appellee herein. In the years 1944, 1946, 1948 and 1949 Katherine executed affidavits of mortgage indebtedness in which she represented herself to be the owner of the land ostensibly conveyed to the appellant by the deed of October 20, 1931. These affidavits were made and filed with the knowledge of the appellant who at no time protested the procedure or claimed mortgage exemptions in her own behalf. On February

26, 1949, at the request of the Farmers State Bank of Rockport and with the appellant's approval, Katherine and her husband James W. Harris, Sr., renewed the mortgage the appellant, as guardian, had placed on her daughter's undivided half of said land by the execution of a new mortgage thereon.

On September 25, 1949, Katherine and her husband James W. Harris, Sr., suffered personal injuries in an automobile accident from which they both died on said day, the husband surviving his wife some three or four hours. Katherine left surviving, as her sole and only heirs at law, her husband James W. Harris, Sr., and her mother, this appellant. James W. Harris, Sr., left surviving, as his sole and only heir at law, the appellee herein who is his son by a former marriage and a stranger to the Stevenson blood.

The instrument around which this controversy revolves is in the statutory form of a warranty deed containing no reservations, conditions or restrictions whatever and it is signed and acknowledged in all respects in conformity with the statute. Sec. 56-115, Burns' 1951 Replacement. As a general rule the mere manual tradition of such a deed with no intention on the part of the grantor of vesting any present estate whatever in the grantee is not sufficient delivery to make the deed effectual, and if the grantor's intention by such tradition was to vest title in the grantee only after the grantor's death, the deed must be regarded as testamentary in character. *Spencer* v. *Robbins* (1886), 106 Ind. 580, 5 N. E. 726. Thus it becomes apparent that if there is insufficient evidence in the record before us to support the court's finding that the deed in suit was not delivered to the appellant by its maker with the intention of rendering it presently operative for any purpose, it necessarily follows that the finding concerning the testamentary

character of said deed must also fall as under such circumstances we must accept the instrument for what it purports to be-a deed and not a will.

Where a deed, executed conformably to the statute, is delivered by the grantor to the grantee the law presumes it was done with an intent on the part of the grantor to make it effectual for the purposes therein expressed. *Murrer* v. *Murrer* (1939), 106 Ind. App. 304, 19 N. E. 2d 494; *Osborne* v. *Eslinger* (1900), 155 Ind. 351, 58 N. E. 439; *Kokomo Trust Co.* v. *Hiller* (1918), 67 Ind. App. 611, 116 N. E. 332. Therefore we must presume that when Katherine Stevenson made, signed and acknowledged the deed in controversy and handed it to the appellant with the words, "Well, Mother, here is the deed," she intended to then vest in the appellant fee simple title to the land described. This presumption, like all others, breaks down in the face of evidence to the contrary but such evidence must be clear and convincing. *Potter* v. *Barringer* (1908), 236 Ill. 224, 86 N. E. 233. At the time Katherine signed, acknowledged and handed said deed to the appellant there was nothing in the surrounding circumstances nor in the acts and statements of the parties that tends to indicate that such delivery was qualified in any way. It necessarily follows that the court's finding to the effect that said deed was not intended by the grantor to vest present title in the grantee is based upon the subsequent conduct of the parties.

It seems to be a well recognized rule, in this state and elsewhere, that when a deed is once delivered no subsequent act of the grantor can impair the validity of the conveyance and that the title of the grantee can only be divested by reconveyance or legal proceedings for the purpose. *Stair* v. *Oswalt* (1951), 121 Ind. App. 382, 97 N. E. 2d 375, and cases

cited. This rule, however, applies only where there has been an unqualified delivery of the deed involved. *Klinger* v. *Ottinger* (1939), 216 Ind. 9, 22 N. E. 805. It has been held that while subsequent acts, statements and declarations of the grantor cannot, in themselves, invalidate a deed previously made, they may be considered in determining the grantor's intent in delivering such deed. *Potter* v. *Barringer, supra.* The case just cited holds that the presumption of delivery of a deed, which arises from its possession by the grantee before and after the death of the grantor, is not overcome by the grantor's claim of ownership made subsequent to the execution of said deed nor by the further fact that the grantor retained possession of the property until her death, renewed a mortgage on it and sold minerals underlying the soil. This, to all intents and purposes, is what we have in this case, and while the Potter decision is not binding on us, it is persuasive and respectable authority. There being no law in Indiana to the contrary we choose to follow it.

The judgment is affirmed as to the appellee, Farmers State Bank of Rockport, and reversed as to the appellee, Harris, and so far as it concerns him this cause is remanded with instructions to grant the appellant's motion for a new trial.

NOTE.—Reported in 118 N. E. 2d 368.