**Donald J. DOWNING and Mazola Downing, Appellants,**

v.

**Richard EUBANKS, Steven L. Russell and Robin L. Russell, and Ticor Title Insurance Company of California, Appellees.**

No. 55A01–9001–CV–24.

Court of Appeals of Indiana, First District.

July 30, 1990.

Michael A. Ksenak, Harris & Currens, Mooresville, for appellants.

Ralph M. Foley, Foley, Foley & Peden, Martinsville, Michael Bullington, Indianapolis, for appellees.

BAKER, Judge.

Harold and Mazola Downing, husband and wife (the Downings), appeal an adverse judgment entered against them in a quiet title action brought by plaintiff-appellees Richard Eubanks and Steven and Robin Russell (the Russells). They also appeal the trial court's summary judgment in favor of third party defendant-appellee Ticor Title Insurance Company of California (Ticor). We affirm both judgments.

The Downings raise two restated issues for our review: I. Whether the trial court erred as a matter of law in finding the Russells were the owners of the disputed strip of land. II. Whether Ticor is contractually liable for the Downings' loss.

### Facts

On October 4, 1951, William and Mary Spickler acquired title to a 53.33 acre tract of land in Morgan County, Indiana. After William's death, Mary acquired sole title on November 18, 1971, as surviving tenant by the entireties. On that date, she conveyed a five acre tract (Tract 1) to Mildred Lentz, as trustee for reconveyance. In turn, Lentz reconveyed Tract 1 to Mary on the same date, November 18, 1971. On July 26, 1984, Mary conveyed Tract 1 to Jerry and Anna Spickler, who reconveyed it to Mary on October 30, 1984. On September 19, 1985, the guardian of Mary's estate conveyed Tract 1 to the Downings by deed recorded September 20, 1985.[1]

On August 19, 1977, Mary conveyed a 15 acre tract (Tract 2) which ostensibly abutted Tract 1 to Dean Reimer. Subsequently, the Morgan County Sheriff conveyed Tract 2 to Citizens Bank on April 16, 1980. The bank conveyed it to Eubanks on February 10, 1981. On October 13, 1983, Eubanks conveyed by land contract approximately 7.02 acres of Tract 2 to the Russells.[2]

---

1. In each of the conveyances, Tract 1 was described as:

   A part of two thirds off of the North end of the East half of the Southwest quarter of Section 12, Township 12 North, Range 1 West, Morgan County, Indiana, more particularly described as follows, to wit:
   Beginning at a road nail in the County Highway and on the North line of the said Southwest Quarter of Section 12 which is 699 feet West of the stone at the center of said Section 12 and running thence South parallel with the mid line of the section for 617.5 feet to an iron pipe; thence running West parallel with said North boundary for 354.0 feet to an iron pipe; thence running North 617.5 feet to a nail in the County Highway and on the quarter section line; thence running East along the highway and quarter section line for 354.0 feet to the place of beginning, containing 5.0 acres, more or less ...
   *Record* at 114.

2. In each of the conveyances, Tract 2 was described as follows:

   A part of the East half of the Southwest quarter of Section 12, Township 12 North, Range 1 West of the Second Principal Meridian, more particularly described, to-wit:
   BEGINNING at the Northwest corner of the East half of the Southwest quarter of Section

The Russells later had a survey of their tract performed which revealed that their property overlapped the Downings' Tract 1 in a strip approximately 100 feet wide and 617.5 feet long, as shown in Figure 1.[3] [See Appendix for Figure 1.]

Eubanks and the Russells brought this action to quiet title, trespass, and slander of title against the Downings on May 15, 1986. The Downings filed a third party complaint against Ticor, their title insurer, for payment of any covered losses sustained as a result of the action. The trial court granted summary judgment to Ticor on the basis of a policy exclusion and, after trial, entered judgment in favor of Eubanks and the Russells.

## I. OWNERSHIP OF DISPUTED PROPERTY

■ At the outset, we note that Eubanks and the Russells have declined to file an appellee's brief for our review. Accordingly, we will reverse the trial court if the Downings make a prima facie showing of reversible error. *Dorothy Edwards Realtors, Inc. v. McAdams* (1988), Ind.App., 525 N.E.2d 1248.

The Downings argue the area of overlap illustrated is rightfully theirs because the conveyances of Tract 2 were outside their chain of title. They correctly cite our supreme court's recent holding in *Szakaly v. Smith* (1989), Ind., 544 N.E.2d 490 for the proposition that grantees cannot be charged with constructive notice of conveyances outside of their chain of title. In essence, the Downings contend that because the original severance of Tract 1 from the parent tract occurred before the severance of Tract 2 from the parent tract, all facts relating to Tract 2 were outside their chain of title.

■ It is well settled that a reconveyance revests title in the original grantor. *Stevenson v. Harris* (1958), 124 Ind.App. 358, 118 N.E.2d 368. When the reconveyance trustee reconveyed Tract 1 to Mary, who owned abutting or surrounding property, Mary regained title to the undivided parcel of 53.33 acres. The next conveyance was of Tract 2; Tract 1 was not reseparated from the parent tract and resold until several years had passed. Accordingly, when the Downings purchased Tract 1, the history of Tract 1's reincorporation into the parent tract was a matter of record. While remote grantees are not required to search all conveyances from a common grantor, they are required to search those conveyances which fall within their chain of title. *Szakaly, supra.* Here, an examination of the grantor index for Mary Spickler dating from November 18, 1971 would have revealed the conveyance of Tract 2 during a period of Mary's ownership of Tract 1.[4] The Downings were bound by the records in their chain of title, *Residents of Green Springs Valley Subdivision v. Town of Newburgh* (1976), 168 Ind.App. 621, 344 N.E.2d 312, and they cannot avoid the rule merely because the description of Tract 1 erroneously remained unchanged after the creation of Tract 2.

■ The result we reach today is consistent, not only with *Szakaly*, but with the ancient maxim that a grantor cannot convey that which he does not own. Here, Mary effectively conveyed Tract 2 before Tract 1. When her estate conveyed Tract 1 to the Downings, it could not convey the overlapping strip it did not own. "If a grantor conveys property, part of which belongs to the grantor and part of which belongs to another, the deed is good as to

12, Township 12 North, Range 1 West; thence South 1760.0 feet with the West line of said East half quarter; thence East 371.25 feet parallel to the North line of said East half quarter; thence North 1760.0 feet to the North line of said East half quarter; thence West 371.25 feet with said North line to the point of beginning, containing 15.0 acres, more or less.
*Record* at 125.

3. The record does not reveal the exact calls of either the 53.33 acre parent tract or the Russells' 7.02 acre tract. This is not critical, however, because the deeds to Tracts 1 and 2 clearly reveal the area of overlap.

4. Of course, if Tract 1 had never been reconveyed to Mary, but had been conveyed to others instead, the Downings' argument that Tract 2 was outside their chain of title would be correct.

the property owned by the grantor and a mere nullity as to the property not owned by the grantor." *Lisenbee v. Parr* (1970), 62 Tenn.App. 518, 465 S.W.2d 361, 365, *cert. denied.* The trial court properly determined the Russells to be the owners of the overlapping strip of land.[5]

## II. COVERAGE UNDER TITLE INSURANCE POLICY

■ The Downings purchased a title insurance policy from Ticor when they purchased Tract 1. The policy was on the standard preprinted industry wide form of the American Land Title Association, and contained a specific exclusion for overlapping boundaries. The exclusion contained the following language: "This policy does not insure against loss or damage by reason of the following ... GENERAL EXCEPTIONS ... (2) Encroachments, overlaps, boundary line disputes, and any other matters which would be disclosed by an accurate survey and inspection of the premises." *Record* at 37. An accurate survey of Tract 1 would have resulted in the overlap being covered by the policy. The Downings have conceded, however, that they never had a survey performed. *Appellant's Brief* at 20. The trial court accordingly granted Ticor's motion for summary judgment based on the exclusion.

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Hatton v. Fraternal Order of Eagles Aerie #4097*

(1990), Ind.App., 551 N.E.2d 479. We apply the same standard as the trial court and review the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed with the court in the light most favorable to the party opposing the motion. *Id.*

■ The Downings have imaginatively attempted to create a factual issue here. They assert that the words "overlap" and "accurate survey" as used in the exclusion are ambiguous because they are undefined. They "contend that without a standard, establishing a true boundary as being 1.5 acres into a 5 acre tract of land would certainly cause reasonable people to honestly differ as to whether that type of intrusion constitutes an 'overlap' ... within the language of the policy." *Appellant's Brief* at 22. This argument is without merit for two reasons. First, as we have already noted, the Downings never had a survey performed, so the factual question of accuracy is neither genuine nor material; it is merely hypothetical. Second, the word "overlap" is simply not ambiguous, and no reasonable person could determine that the large disputed strip of land between Tracts 1 and 2 was not an overlap. The trial court properly granted summary judgment to Ticor.

The trial court is in all things affirmed.

RATLIFF, C.J. and BUCHANAN, J., concur.

---

**5.** In the Township and Range survey system, Sections numbered 12 fall at the boundary of the township of which they are a part. These sections are often not true to their assumed dimensions (i.e., one square mile) because the curvature of the Earth's surface, which affects the accuracy of survey measurements, is taken into account in township end sections. The problem here could likely have been avoided if the first call of Tract 2 referenced a landmark rather than the imaginary line bounding the East and West halves of the Southwest quarter of Section 12.