In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3384

United States of America,

Plaintiff-Appellee,

v.

William E. Tully, et al.,

Defendants,

Appeal of:

Travis V. Pherson, et al.,

Claimants.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 95 CR 116--James T. Moody, Judge.

Argued February 20, 2002--Decided April 30, 2002

Before Bauer, Ripple, and Manion, Circuit Judges.

Manion, Circuit Judge. Donald L. Vauters, Jr., was indicted for several counts of mail fraud, securities violations, and money laundering. In a plea agreement with the government, he acknowledged his involvement in a conspiracy to commit mail fraud in violation of 18 U.S.C. sec. 371, and agreed that proceeds from the sale of certain real estate, titled in his wife's name but under his direct control, would be used to pay restitution to his victims. When the government filed a motion to disburse the proceeds from the sale of the property to the restitution victims, various individual claimants objected. The district court overruled the claimants' objections, and granted the government's motion to disburse. The claimants appeal the district court's decision. We affirm.

I.

Between September 12, 1994 and March 6, 1995, Travis Van Matre Pherson, Bedelia

Weirick, Raymond Weirick (through his widow, Bedelia Weirick), Virginia Siscoe, Beryl Siscoe, Donald and Marjorie Phillips, and Illene Burton ("claimants") collectively invested $157,000 with Mallard Marketing, Inc. In return for their investments, Mallard's president, Donald L. Vauters, Jr., executed and delivered promissory notes to the claimants that referenced the construction of a private residence and promised to pay them back the principal amount of their loans, with interest at the rate of 10% per annum, by certain due dates. The promissory notes provided that if they were not paid in full by their respective due dates, Mallard, the maker, would execute and record mortgage liens in favor of the claimants, as note holders, on property commonly known as 4418 East 50 North, Lafayette, Indiana, and more particularly described as: "Part of lot 32 and lot 33 in Wildcat Valley Estates Subdivision, Phase One, Fairfield Township, as recorded in Document No. 94-20581, in the Tippecanoe County Recorder's Office, Tippecanoe County, Indiana" ("Lot 32/33").

Unfortunately for the claimants, Mallard never owned Lot 32/33. Baumco, Inc. or Connie I. Vauters/1 was the title holder of record for the real estate during the time period the claimants invested their money with Mallard. The deed to Lot 32/33 was conveyed to Connie Vauters, in her personal capacity, by Baumco, Inc. on or about October 20, 1994, and was recorded in the Tippecanoe County Recorder's Office on October 24, 1994. Shortly thereafter, Mallard constructed a two-story private residence on Lot 32/33 with the money it received from the claimants and additional funds that Connie Vauters obtained by issuing a mortgage on the property in favor of Sure Foundation, Inc. Mallard subsequently defaulted on each of the claimants' promissory notes, none of which was ever secured by a mortgage on Lot 32/33.

On December 12, 1995, a criminal indictment was returned against Donald Vauters, among others, charging him with numerous counts of mail fraud, securities violations, and money laundering. That same day, the district court issued a protective order prohibiting the disposition of Lot 32/33, in which Donald Vauters had an interest. Lot 32/33 was

thereafter sold for $251,500 pursuant to an Order of Sale and Stipulated Motion for Sale ("Order of Sale") approved by the district court on July 25, 1996./2 On or about August 9, 1996, the net proceeds from the sale of Lot 32/33, $229,349.29, were deposited into an interest-bearing account with the district court pursuant to Fed. R. Civ. P. 67./3

On April 21, 1998, Donald Vauters pleaded guilty to conspiracy to commit mail fraud, and in doing so acknowledged that he was the true owner of Lot 32/33, even though his wife was publicly listed as the record title holder for the property. As part of his plea agreement, Vauters agreed that the proceeds from the sale of Lot 32/33 would be used to pay restitution to the numerous victims of his criminal misconduct. On February 10, 1999, Vauters was sentenced by the district court. His sentence provided, among other things, that he pay restitution to his victims in the amount of $5,701,735.92.

On October 29, 1999, the United States filed a motion seeking an order authorizing the clerk of court to disburse the proceeds from the sale of Lot 32/33 to the named restitution victims. In that motion, the government noted that "there are individuals [i.e., the claimants] who are not restitution victims who may claim some right, interest or title to the proceeds of the sale of [Lot 32/33] . . . ." A copy of the motion was mailed to each of the claimants that same day.

On or about February 14, 2000, the claimants filed "Notices of Claims" in response to the government's motion to disburse funds, objecting to the disbursement of the proceeds from the sale of Lot 32/33 to the restitution victims. The claimants argued that because the private residence on Lot 32/33 was primarily constructed with the money they invested with Mallard, they had equitable liens on the property that now covered the sale proceeds. The claimants further contended that their respective interests were superior to those of any other "claimants and parties of interest." The basis of the claimants' objections to the government's motion to disburse funds, both here and at trial,

is that Mallard's promises to execute mortgage liens on their behalf, in return for the money they loaned the corporation, created equitable liens on Lot 32/33 that now cover the proceeds obtained from the forced sale of the property. The government argues that the claimants did not have equitable liens on Lot 32/33 at the time the property was sold. Furthermore, the government contends that even if such liens existed, they would nevertheless be inferior to the statutory lien the United States has on the sale proceeds, pursuant to 18 U.S.C. sec. 3613(c),/4 as a result of the district court's restitution order. The district court agreed with the government's position, and granted its motion to disburse funds. The claimants filed a timely appeal to the district court's decision.

II.

The facts of this case are undisputed. The questions before us are whether, under Indiana law, the claimants possessed equitable liens on Lot 32/33 at the time the property was sold, and, if so, whether those liens have priority over the government's sec. 3613(c) lien with respect to the proceeds from the sale of the property. We review these issues de novo. See, e.g., Appeal of Swartz, 18 F.3d 413, 415-16 (7th Cir. 1994).

Because the real estate at issue is located in Indiana, Indiana law is controlling on the question of whether the claimants have equitable liens on the proceeds from the forced sale of Lot 32/33. See, e.g., United States v. Craft, No. 00-1831, ___ U.S. ___, 2002 WL 561332, *3 (April 17, 2002) ("[a] common idiom describes property as a 'bundle of sticks'--a collection of individual rights which, in certain combinations, constitute property. State law determines only which sticks are in a person's bundle. . . .") (internal citations omitted). Under Indiana law, an equitable lien on real property is created when a property owner creates a written agreement that sufficiently indicates an intention to make his property, as described in the agreement, a security for a debt or other obligation. See, e.g., Gretzinger v. Arehart, 193 N.E. 714, 716 (Ind. App. 1935). As with liens at law, "where the existence of an

equitable lien depends on construction of a written contract based on valuable consideration, a lien may be declared where the intent to secure an obligation with the subject property is clear on the face of the agreement." Noblesville Redevelopment Comm'n v. Noblesville Associates Ltd. P'ship, 674 N.E.2d 558, 562 (Ind. 1996). The intent to create a lien "must be objectively clear [or] . . . no lien exists at law or equity." Id.

We need not, however, engage in the exercise of determining whether the claimants' promissory notes provide a basis for placing equitable liens on Lot 32/33 because Mallard, the maker of the promissory notes, was never the record title holder for the property. When Donald Vauters, as president of Mallard, executed each of the claimants' promissory notes, either Baumco, Inc. or Connie Vauters was the record title holder for Lot 32/33. Obviously, "a grantor cannot convey that which he does not own." Downing v. Eubanks, 557 N.E.2d 1027, 1029 (Ind. Ct. App. 1990). Therefore, notwithstanding its "promises" to the claimants, Mallard had no authority to record mortgage liens on Lot 32/33 when the corporation defaulted on their promissory notes. The claimants, therefore, have no legal basis for claiming entitlement to equitable liens on the property./5

After his fraud was exposed, Vauters pleaded guilty to being involved in a conspiracy to commit mail fraud and confessed that he was "the true owner of [Lot 32/33], and that any other names appearing as owners or joint owners [were] only nominees." While it is true that under Indiana law his statement could serve as a basis for piercing the corporate veil of Mallard, see Comm'r, Dept. of Envtl. Mgmt. v. RLG, Inc., 755 N.E.2d 556, 563 (Ind. 2001), this belated admission is of little assistance to the claimants in this criminal proceeding.

The claimants' Notices of Claims requested that "their interests [i.e., alleged equitable liens] in this cause be protected by the [district court]." However, at the time they filed this collective notice no such "interests" had yet been established. Thus, while the claimants might have, at one time, possessed the ability to obtain equitable

liens on Lot 32/33 by filing civil actions against Mallard and the Vauters, they failed to do so. There is a significant distinction between having the right to seek an equitable lien on real estate, and actually obtaining such a lien. See Lakeshore Bank & Trust Co. v. United Farm Bureau Mut. Ins. Co., Inc., 474 N.E.2d 1024, 1027 (Ind. Ct. App. 1985) (holding that "by commencement of the proceedings and service of the summons the creditor acquires an equitable lien on the credit or funds due to the debtor."). In any event, this criminal proceeding was not the proper forum for the claimants to have their claims of entitlement to equitable liens considered. The purpose of the district court's hearing on the government's motion to disburse funds was to determine whether the claimants' current interests in the proceeds from the sale of Lot 32/33 were superior to the interest the government possessed as a result of its statutory lien. See LTV Corp. v. Gulf States Steel, Inc. of Ala., 969 F.2d 1050, 1063 (D.C. Cir. 1992) (holding that the Rule 67 procedure "'provides a place of safekeeping for disputed funds pending the resolution of a legal dispute, but it cannot be used as a means of altering the contractual relationships and legal duties [or rights] of the parties.'") (citations omitted). The district court correctly concluded that the claimants' promissory notes only provided them with unsecured interests in the property's sale proceeds.

While we sympathize with the claimants, their financial losses were certainly preventable. Rather than simply accepting promises from Mallard that it would execute mortgages on Lot 32/33 in the event the corporation defaulted on their promissory notes, the claimants should have insisted from the outset that the corporation secure their loans with mortgages on the property. Had they done so, Vauters' scheme would have most likely been foiled. Donald Vauters was no doubt aware that Mallard was not the record title holder for Lot 32/33, and that a title search would reveal this fact to the claimants. It is, therefore, quite unlikely that Vauters would have succeeded in defrauding the claimants had they been reasonably diligent in protecting their respective investments. Under Indiana law, a litigant may be

precluded from equitable relief if the harm he suffers could have been prevented by reasonable diligence on his part. See, e.g., Mackiewicz v. Metzger, 750 N.E.2d 812, 821 (Ind. Ct. App. 2001); Wilshire Servicing Corp. v. Timber Ridge P'ship, 743 N.E.2d 1173, 1178-80 (Ind. Ct. App. 2001); Lakeshore Bank, 474 N.E.2d at 1026.

In fact, the very purpose of Indiana's recording statute is to "provide protection to subsequent purchasers, lessees, and mortgagees." Keybank Nat'l Ass'n v. NBD Bank, 699 N.E.2d 322, 327 (Ind. Ct. App. 1998). Because the identity of a property's title holder of record is a matter of public record, Indiana law charges the claimants with "constructive" notice that either Baumco, Inc. or Connie Vauters was the title holder of record for Lot 32/33 at the time they invested their money with Mallard. See id. (holding that "[c]onstructive notice is provided when a deed or mortgage is properly acknowledged and placed on the record as required by statute.").

As previously noted, there is nothing in the record indicating that the claimants ever took any legal action to enforce their rights under the respective promissory notes. The due dates on the promissory notes range from June 25, 1995 through December 5, 1995, and the court-ordered sale of Lot 32/33 occurred on July 25, 1996. More importantly, while Donald Vauters was indicted on December 12, 1995, it was not until April 21, 1998, that the district court entered the restitution order directing that the proceeds from the sale of Lot 32/33 be divided among all of Vauters' victims. As such, the claimants had ample time, between the dates of Mallard's defaults and the date of the restitution order, to file civil actions and have their respective interests in Lot 32/33 considered and ruled upon by a court. It is a well- known maxim of equity that "equity aids the vigilant, not those who sleep on their rights." Wagner v. Estate of Fox, 717 N.E.2d 195, 201 (Ind. Ct. App. 1999). Indiana courts have also held that "[a] party will be relieved against his own mistake or carelessness where no rights of third persons have intervened, but not where rights have been lost, or money parted with, on the faith of the

apparent facts, without fault of any body
except the party seeking relief." Gray v.
Robinson, 90 Ind. 527, 533 (1883)
(emphasis added). The claimants' failure
to obtain, prior to this proceeding,
judicial determinations granting them
equitable liens on Lot 32/33 leaves them
with nothing more than unsecured
interests in the property's sale
proceeds. The government's statutory lien
on the sale proceeds obviously takes
priority over such unsecured interests.
See 18 U.S.C. sec. 3613.

III.

   The claimants do not have equitable
liens on the proceeds from the sale of
Lot 32/33. As such, the district court
properly granted the government's motion
to disburse funds. We, therefore, AFFIRM
the decision of the district court.

FOOTNOTES

/1 Connie Vauters was the incorporator, registered
agent, and secretary of Mallard, as well as
Donald Vauters' wife.

/2 The Stipulated Motion for Sale provided that "[a]
contract for sale and purchase of [Lot 32/33] has
been entered into by Connie Vauters, the seller,
and a buyer . . . [and] Connie Vauters has
requested that this property be sold and is in
full agreement with the terms of the sale as
stated in this motion."

/3 Fed. R. Civ. P. 67 provides, in part, that "[i]n
an action in which any part of the relief sought
is a judgment for a sum of money or the disposi-
tion of a sum of money or the disposition of any
other thing capable of delivery, a party, upon
notice to every other party, and by leave of
court, may deposit with the court all or any part
of such sum or thing, whether or not that party
claims all or any part of the sum or thing."

/4 18 U.S.C. sec. 3613(c) provides that "[a] fine
imposed pursuant to the provisions of subchapter
C of chapter 227 of this title, or an order of
restitution made pursuant to sections 2248, 2259,
2264, 2327, 3663, 3663A, or 3664 of this title,
is a lien in favor of the United States on all
property and rights to property of the person
fined as if the liability of the person fined
were a liability for a tax assessed under the
Internal Revenue Code of 1986. The lien arises on
the entry of judgment and continues for 20 years
or until the liability is satisfied, remitted,
set aside, or is terminated under subsection

(b)."

/5 The district court came to this same conclusion, noting "because Mallard Marketing, Inc. never owned the property in question, Mallard's promise to encumber the property is without effect."