**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-14078
Non-Argument Calendar

_____

SANBAR ISLE, LLC,

*Plaintiff-Appellant,*

*versus*

UNITED STATES OF AMERICA,
THE BOARD OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE STATE
OF FLORIDA,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cv-61231-AHS

_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

A 2.57-acre island sits on the Intracoastal Waterway in Fort Lauderdale, Florida—at the spot where the New River and the Stranahan River meet. Ever since Florida joined the Union in 1845, that land has belonged to the State. And for the last 95 years, the United States has owned a permanent easement over it. Now claiming to be the rightful and exclusive owner of the island property, Sanbar Isle LLC sued the United States and Florida's Board of Trustees of the Internal Improvement Trust Fund for quiet title.[1] The district court dismissed Sanbar's claim against the United States as untimely and its claim against Florida as implausible. We affirm.

## I.

In 1931, Florida granted the United States a permanent easement over the island for the construction and maintenance of the Intracoastal Waterway. The United States promptly recorded that easement in Broward County's Deed Book.

In this case, Sanbar contends that Florida tried to convey a property interest which it did not have. In Sanbar's view, Florida relinquished its interest in the island back in 1890, when it conveyed a tract of land named "Government Lot 6" to a private company. Government Lot 6 sits on the mainland, bounded by the banks of the New River. This land has changed hands many times over the

---

[1] The Board "is vested and charged with the acquisition, administration, management, control, supervision, conservation, protection, and disposition of all lands owned by" the State of Florida. Fla. Stat. § 253.03(1). For purposes of this opinion, we will refer to the Board as "Florida."

years. Sanbar—the current owner—claims that the disputed island property broke off from the mainland sometime after 1890, and thus has always been part of Government Lot 6.

## II.

We review de novo a district court's dismissal of a complaint for failure to state a claim. *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019). We accept the complaint's well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *Id.* When "a plaintiff refers to a document in its complaint, the document is central to its claim," and "its contents are not in dispute," we may consider it. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

## III.

The district court did not err by dismissing Sanbar's claim against the United States on statute of limitations grounds and its claim against Florida on the merits.

## A.

The Quiet Title Act provides "the exclusive means by which adverse claimants could challenge the United States' title to real property." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983). Under that statute, any action filed by a private party "shall be barred unless it is commenced within twelve years of the date upon which it accrued." 28 U.S.C. § 2409a(g). And the action "shall be deemed to have accrued on the date the plaintiff or

his predecessor in interest knew or should have known of the claim of the United States." *Id.* In other words, the clock begins to run "as soon as a plaintiff acquires actual or constructive notice of the government's claim." *F.E.B. Corp. v. United States*, 818 F.3d 681, 692 (11th Cir. 2016), *abrogated on other grounds by Wilkins v. United States*, 598 U.S. 152 (2023) (holding that the twelve-year time limit is not jurisdictional). The "trigger for starting that twelve-year clock . . . is an exceedingly light one." *George v. United States*, 672 F.3d 942, 944 (10th Cir. 2012) (Gorsuch, J.).

It is "uniformly held that the registration of a conveyance operates as constructive notice to all subsequent purchasers of any estate, legal or equitable, in the same property." *Neslin v. Wells*, 104 U.S. 428, 434 (1881); *see, e.g.*, *Ayers v. Davidson*, 285 F.2d 137, 139 (5th Cir. 1960).[2] Indeed, "the very purpose" of a recording requirement is to "provide protection to subsequent purchasers, lessees, and mortgagees," so they can discover possible claimants and encumbrances before closing on a real property transaction. *United States v. Tully*, 288 F.3d 982, 987–88 (7th Cir. 2002) (quotation omitted). Here, the United States properly recorded its easement deed on November 10, 1931. So Sanbar's predecessors in interest had notice of the encumbrance for many decades.

Sanbar argues that the recording of a deed cannot constitute constructive notice if the conveyance being recorded is invalid

---

[2] Decisions by the former Fifth Circuit handed down before October 1, 1981, are binding on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

under state law.  But the "crucial issue in the statute of limitations inquiry is whether the plaintiff had notice of the federal claim, not whether the claim itself is valid."  *F.E.B. Corp.*, 818 F.3d at 686 (quotation omitted).  The "merits of the government's claim are irrelevant:  Even invalid government claims trigger the [Quiet Title Act] limitations period."  *Id.* (quotation omitted).  "Were the rule otherwise, of course, the statute of limitations and merits inquiries would collapse and involve no analytically distinct work."  *George*, 672 F.3d at 946.  Because the United States properly recorded the easement deed in 1931, Sanbar's quiet title claim against the United States is untimely under § 2409a(g).

## B.

Sanbar's state law quiet title claim against Florida turns on whether the disputed island property was part of Florida's conveyance of Government Lot 6 to Sanbar's predecessor in interest.  All of the exhibits attached to the complaint confirm that the answer is no.

Under Florida law, "where by the original survey and government plat a tract of land appears to have as its boundary a body of water," that body of water is a "natural monument" that marks the boundary line.  *Calder v. Hillsboro Land Co.*, 122 So. 2d 445, 457 (Fla. Dist. Ct. App. 1960) (quotation omitted); *see also Broward v. Mabry*, 50 So. 826, 830 (Fla. 1909).  Here, Government Lot 6 is bounded on the east by the banks of the New River.  As far back as records reflect, the disputed island property has sat east of that boundary line.  In particular, a copy of the United States

General Land Office survey from 1870 depicts that property as an island—surrounded on all sides by the New River.[3]  Sanbar does not (and cannot) allege that the island broke away from the mainland sometime after 1890.  Florida therefore did not relinquish ownership over the island property when it transferred Government Lot 6 to Sanbar's predecessor in interest.  Any instrument in Sanbar's chain of title purporting to convey the disputed property is, to that extent, void.  *See Rabinowitz v. Keefer*, 132 So. 297, 303 (Fla. 1931).  The island remains sovereign territory, and the district court correctly dismissed Sanbar's quiet title claim to the contrary.

                        ⋆        ⋆        ⋆

        We **AFFIRM**.

---

[3] Sanbar contends that it is "not clear" from this survey whether the disputed property is one of the "few islands off of the mainland."  But this argument is hard to square with the fact that Sanbar identified the disputed island property by drawing a conspicuous red circle around it.